**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Lara S. Mehraban**
**Michael D. Paley**
**Kevin P. McGrath**
**Thomas W. Peirce***
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**212-336-0533**
**Email: mcgrathk@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| **Plaintiff,** | **21 CV 8739 (  )(  )** |
| -against- | **ECF Case** |
| **STEVEN M. GALLAGHER, a/k/a "Alexander Delarge 655321,"** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Steven M. Gallagher ("Gallagher" or "Defendant"), alleges as follows:

## SUMMARY

1.     The Commission brings this action to halt the Defendant's ongoing violations of

the federal securities laws.

2.     Since at least December 2019 and continuing to October 2021, the Defendant has

used his Twitter platform to promote and encourage the purchase of dozens of specific microcap

stocks, while simultaneously selling his own shares and not disclosing that fact (a practice known as "scalping").

3. Scalping is a scheme or artifice to defraud in which a defendant (i) acquires shares of a stock; (ii) recommends that others purchase the stock without disclosing his intention to sell; and (iii) subsequently sells the stock for his own benefit.

4. As part of his scalping scheme, Gallagher also, on some occasions, disseminated false and/or misleading information about the promoted issuers, or falsely stated that he was not selling the stock that he was concurrently recommending that his Twitter followers and other Twitter viewers buy. For at least two issuers, Gallagher also engaged in multiple instances of manipulative trading by placing multiple buy orders at the end of the trading day to raise the stocks' price ("marking the close") to mislead the public about the trajectory of the stocks' price. "Marking the close" is the term used to describe the practice of buying or selling stocks near the close of trading to affect the closing price.

5. Gallagher has engaged in scalping in connection with the stock of at least 60 issuers to date (as summarized in the chart contained in Attachment A to this Complaint) and has generated at least $3.39 million in profits from his fraudulent and manipulative scheme.

6. Gallagher's conduct is ongoing. Despite repeated, written warnings from his brokerage firm ("Broker A") that he appeared to be engaged in manipulative trading in violation of securities laws and regulations, Gallagher continued to engage in manipulative trading and scalping. On September 9, 2021, Broker A informed Gallagher that it was closing his trading account effective October 9, 2021, and that it would immediately prevent him from making new stock purchases, restrict his account to just liquidating transactions, and not allow him to open a new account in the future.

7. Despite these warnings and termination, Gallagher continued to engage in

scalping through sales of stock he already held in his Broker A account.  In addition, on the very day that Broker A told Gallagher it was shutting down his account, Gallagher opened a trading account at Broker B, indicating that he intended to use the account for "active/day trading."  As of October 14, 2021, that account has approximately 40 penny stocks in it, with a market value of approximately $1 million, and Gallagher has continued to engage in scalping stocks in that account as recently as October 13, 2021, undeterred by the prior warnings from Broker A.

8.  To prevent continuing harm to investors, the Commission seeks emergency relief in the form of: (1) a temporary restraining order and preliminary injunction enjoining Gallagher from ongoing and future violations of the federal securities laws and rules this Complaint alleges he has violated; (2) a freeze on Gallagher's assets, up to $6.9 million, to preserve the *status quo* and preserve assets sufficient for Defendant to pay disgorgement, prejudgment interest and civil money penalties in accordance with any final judgment of this Court; 3) an order permitting the Commission to engage in expedited discovery in preparation for a preliminary injunction hearing, if so ordered by the Court; and (4) an order enjoining Gallagher from destroying evidence.

9.  The Commission also seeks: (1) a permanent injunction enjoining Gallagher from ongoing and future violations of the federal securities laws and rules this Complaint alleges he has violated; (2) disgorgement of Gallagher's ill-gotten gains and prejudgment interest thereon; (3) imposition of a civil money penalty; and (4) imposition of a penny stock bar.

## **VIOLATIONS**

10.  By virtue of the foregoing conduct and as alleged further herein, Gallagher's fraudulent and manipulative conduct violates Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 9(a)(2) of the Securities Exchange Act of 1934

("Exchange Act") [15 U.S.C. § 78i(a)(2)] and Section 10(b) [15 U.S.C. § 78j(b)] of the Exchange Act and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

11.     Unless Gallagher is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12.     The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

13.     To maintain the *status quo* and to preserve assets sufficient for Gallagher to pay disgorgement, prejudgment interest, and civil money penalties in accordance with any final judgment of this Court, the Commission seeks emergency relief during the pendency of this action, including a temporary restraining order and a preliminary injunction: (1) enjoining Gallagher from ongoing and future violations of the federal securities laws and rules this Complaint alleges he has violated; (2) freezing Gallagher's assets, up to $6.9 million;  (3) granting the Commission expedited discovery; and (4) prohibiting Gallagher from destroying, altering, or otherwise disposing of relevant documents.

14.     The Commission seeks a final judgment: (a) permanently enjoining Gallagher from violating the federal securities laws this Complaint alleges he has violated; (b) ordering Gallagher to disgorge all ill-gotten gains and/or unjust enrichment he has received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Gallagher to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and

Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Gallagher from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

16.     Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

17.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Defendant transacted business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.  For example, the Depository Trust & Clearing Corporation ("DTCC"), which clears all securities traded by the Defendant, is based in this District and various trades executed by the Defendant were cleared, in whole or in part, through DTCC computers located in this District.

## DEFENDANT

18.     **Gallagher,** age 50, resides in Maumee, Ohio.  Since at least September 2019, he has controlled a Twitter account in the name of "Alexander Delarge 655321", with the handle @AlexDelarge6553, that he uses primarily to promote microcap securities.  Under the @AlexDelarge6553 handle, Gallagher has tweeted screenshots of portions of his brokerage records that, in fact, match Gallagher's brokerage records.  Gallagher currently has over 70,000

Twitter followers.

<h1 style="text-align:center">FACTS</h1>

## I.    SUMMARY OF GALLAGHER'S SCALPING SCHEME

19.    As alleged below, Gallagher is engaged in an ongoing fraudulent scheme to promote and manipulate primarily OTC quoted and traded securities,[1] using his Twitter account with the handle @AlexDelarge6553, by encouraging investors to buy specific securities (the "Target Securities"), while at the same time — contrary to his advice to his tens of thousands of Twitter followers, as well as to the viewing public who read his Twitter posts — selling his own holdings of those securities into the inflated price and liquidity that his tweets helped create.

20.    Gallagher often initially communicates by private messaging on Twitter (commonly referred to as "direct messages" or "DMs") with a small, select group of other Twitter users ("associates") about potential issuers to manipulate, choosing issuers that have: a large public float, i.e., a large quantity of shares on the public market; and a low price per share (generally, a fraction of a cent).

21.    Gallagher typically acquires millions of shares of a Target Security in advance of his promotional campaign — a practice he refers to as "loading" (also commonly known as "frontloading").  He also often reaches an agreement with select associates on a date and time when they will start publicly tweeting a message telling his followers and public viewers to buy the Target Security.

22.    Gallagher refers to the public signal to begin buying as the "Alert."  For example,

---

[1] OTC securities refers to securities quoted and traded on OTC Link, owned by OTC Markets Group Inc.  Most of the Target Securities are what are commonly referred to as "penny stocks," which typically trade over OTC Link for fractions of a penny per share.

Gallagher told an associate in a DM on November 28, 2020 "afom [the OTC ticker symbol for All for One Media Corp.] try not to push that so i can load for a latter alert next week."[2]  And, on November 30, Gallagher sent a DM to another associate: "im alert afom tomorrow thatll be the big run. im quiet with it now loading dips."  Gallagher's reference to "loading dips" appears to mean that he is buying (loading) shares of AFOM when the stock drops (dips) in price, prior to sending buy Alerts to his Twitter followers and viewers.

23.     Gallagher bought 20 million shares of AFOM on November 30 and tweeted a flashing red Alert when the market opened on the morning of December 1, 2020.  The Alert had a flashing red graphic "ALERT!!!! ALEXANDER DELARGE" and stated: "Challenge alert!! $afom this runs like no other!! Load and hold this is a swing multiple pennies fast!! Buy $afom 500% runner today".  "Runner" evidently means the stock will rise sharply in value.  That same morning, after his Alert, Gallagher sold 13 million shares of AFOM for an approximate profit of $42,000.

24.     In many instances, after Gallagher had loaded up on shares of the Target Security — but before the Alert — he privately informed a small number of Twitter users in select stock private chat rooms that they should start acquiring shares in the Target Security because his Alert was imminent.

25.      Gallagher alluded to this tactic in DMs with an associate prior to Gallagher's promotion of penny stock Life on Earth, Inc. (OTC ticker: "LFER"), as follows: "im in 30 rooms ill let one at a time know and build slowly . . . ok end of day ill gather groups throughout the day . . . oh we will rock this easy"  and "MOVING THIS GOOD TELLING PEOPLE IN DMS . . .

---

[2] Gallagher's DMs and tweets, which often contain typographical and grammatical errors, are quoted verbatim herein.

Ok ive gotten 100s of buyers . . . im gonna alert to the masses you cool with that . . . WE A GOOD TEAM BUDDY".

26.     Giving select associates and members of private chat rooms a heads up to start buying the Target Security before Gallagher's public Alert often increases the volume of trading and creates an upward looking trend in the Target Security's price, making the stock look more attractive to Gallagher's intended victims when he would issue his public Alert.

27.     The Alerts vary, but typically are accompanied by a GIF (short for Graphics Interchange Format, which is a short animated video clip) of a flashing red "ALERT!!!!" or occasionally, a siren.  At other times, Gallagher builds up to these red Alerts through a series of soft alerts, such as adding the issuer to a ranked list of his weekly stock picks.  The red Alerts are often posted just prior to, or during, his sale of shares.  The following is an example of a red Alert:



28.     "Trips" appears to refer to a price per share of $0.0009 or less.  In this tweet, Gallagher is apparently telling his followers and public viewers to buy shares of SCIE so that their coordinated purchases will move SCIE's price per share from a thousandth of a cent to

"pennies" per share, resulting in a profit.

29.     Following Gallagher's public Alert on Twitter — and after the momentum generated by the purchasing activity of Gallagher, his select associates and private chat room members — as the share price and trading volume of the Target Security begins to increase, Gallagher begins to sell his shares of the Target Security.

30.     The Alerts are often followed by numerous additional tweets or retweets by Gallagher stating or implying that the Target Security is a buy (and/or hold) opportunity.  A retweet consists of Gallagher forwarding a stock recommendation tweet from another person to his Twitter followers and public viewers, often with added commentary by Gallagher either implicitly or explicitly endorsing the original tweet.  Gallagher often retweeted tweets from his associates, with whom he has coordinated in DMs.

31.     Gallagher's tweets and retweets vary but have included false information about the issuer of the Target Security — such as publishing false and/or misleading tweets about a pending merger of LFER; false information that he was not selling (e.g. tweeting: "$tsnp . . . Not selling!" — minutes before selling shares in the referenced Target Security [TSNP]; or falsely claiming that he did not benefit from sending his buy Alerts (e.g., tweeting, falsely, in reply to two Twitter users: "Never have I alerted a stock and sold.")

32.     To date, Gallagher has engaged in scalping in connection with sixty securities, just within the period December 2019 to October 2021, earning profits of approximately $3.39 million (*See* Attachment A).

## II.     GALLAGHER'S SCIE SCALPING SCHEME

33.      One of the stocks that Gallagher scalped was SpectraScience, Inc. ("SCIE").  Gallagher's conduct in connection with SCIE is typical of Gallagher's scalping in the other

securities listed in Attachment A.  Gallagher generated profits of approximately $22,000 by engaging in a scheme to scalp shares of SCIE, which he traded between December 2020 and March 2021.

34.     On December 5, 2020 (a Saturday), Gallagher and an associate ("Associate A") exchanged private direct messages, in which they agreed to start promoting SCIE.  Gallagher asked Associate A by DM for some information about the company, but Associate A replied that "SCIE is just a shell with no guts but whenever [Individual A] starts pumping [Individual B] is behind it he usually messages me what's up I'm going to message him."  Associate A appears to be communicating to Gallagher that SCIE has no business operations but that, given that Individual A is pumping the stock, that usually means that Individual B is behind a plan to pump and dump that stock; and Associate A is planning to reach out to Individual B to find out what the plan is.

35.     Gallagher then sent a DM to Associate B: ". . . if you keep scie quit so I can get in cheap ill try to give it a run starting Tuesday cool?"

36.     As of December 2020, SCIE was an inactive Minnesota corporation whose shares were registered with the Commission and were quoted and traded on OTC Link.

37.     SCIE was, as of December 2020, and continues to be, delinquent in its periodic filings with the Commission.  It has not filed any quarterly or annual reports since it filed a Form 10-Q on November 14, 2017, for the period September 30, 2017.  SCIE also has not filed any Forms 12b-25 explaining its inability to timely file those Forms 10-Q and Forms 10-K.

38.     In its last filing with the Commission in 2017, SCIE was listed as being headquartered in San Diego, California and involved in the development of electromedical devices.  However, during the period of Gallagher's scalping of SCIE shares, both the telephone

number and the website listed for SCIE on the OTC Markets website were inoperable.

39.     A search for officers listed in SCIE filings did not identify current corporate officers or contact information.  On-line photos of SCIE's San Diego address in February 2021, during the events described below, indicate that the address provided for its corporate premises was empty inside and under renovation.  SCIE also has not issued any press releases since at least November 2017.

40.     On Monday, December 7, 2020 at the market's open, Gallagher bought 10 million shares of SCIE at $0.0003 per share.  Later that morning, Gallagher began his campaign of public SCIE touts, including tweeting "i loaded this $scie future alert i think," and, on December 8, "$scie will have its day im loading these cheap levels. hint".  On December 9, 2020, Gallagher bought another 6 million shares of SCIE at $0.0003 per share.

41.     On December 10, 2020, Gallagher tweeted "$scie this is loading time FYI SHARING MY PLAYS", attaching a re-tweet with a false and/or misleading claim that "SCIE Will Begin meeting with the FDA towards the preparation and submission of Supplemental PMA filing with the FDA and plan for additional clinical trials to support eventual approval for sale in the United States !!".  The claim appears to have been copied from SCIE's November 2017 Quarterly Report.  Gallagher's tweet misleadingly suggested that SCIE was planning to meet with the FDA as of December 2020.  In fact, SCIE did not file any Quarterly Reports after November 2017 and did not publish any press releases on its OTC Markets webpage after that date.  Thus, these could not have been a basis for Gallagher's tout that SCIE had plans to meet with the FDA in December 2020.

42.     On January 13, 2021, Gallagher bought another 10 million shares of SCIE for $0.0003 per share and continued to tweet buy recommendations until, on January 27, 2021,

Gallagher issued a red Alert to buy SCIE, which said: "$scie! Challenge buy Alert trips to pennies hold and we all win big!"  The red Alerts differ from Gallagher's other buy touts in their sense of urgency, with a flashing red GIF "ALERT!!!! ALEXANDER DELARGE".  This red Alert was followed by approximately 20 more tweets that day by Gallagher touting SCIE, some containing false and/or misleading information about SCIE's current business operations, such as:

> SpectraScience, Inc. is focused on developing its WavSTAT Optical Biopsy System (WavSTAT).  The WavSTAT employs a risk technology that optically illuminates tissue in real-time to distinguish between normal and pre cancerous or cancerous tissue.  $scie #buyscie; and

> Cancer killing with patents. #buyscie.

43.     Given that Gallagher had been advised that the company was a shell, and given the lack of public information regarding the company's actual, if any, business operations, Gallagher knew, or was reckless in not knowing, that these claims were false and/or misleading.

44.     On January 27, 2021, Gallagher sent a tweet to buy SCIE (in which he included a GIF of a group dancing together and the line "We're all in this together").  Gallagher's buy recommendations were clearly material, as evidenced, by way of example, by the enthusiastic responses to his recommendation from his followers, such as: (1) "I downloaded ameritrade just to follow your moves but don't have access to my funds until Friday morning…..the hurt of not being able to make moves"; (2) "#buyscie stick to the plan"; (3) "Actually was just running that through my head. It cant go down"; (4) "#buyscie I really hope this works"; (5) "YOU ARE THE MAN! BRILLIANT"; (6) "I m dancing boss ☺"; (7) "How soon can we buy again?"; (8) "I'm with you #buyscie"; (9) "I have a feeling I'll be loading more $SCIE in the morning."

45.     After the market closed on January 27, 2021, and despite his SCIE buy recommendations and his claim to his Twitter followers that: "We're all in this together," Gallagher entered four limit sell orders, each for the sale of 1 million shares at progressively

higher prices beginning at \$0.0025, then \$0.0030, then \$0.0035 and finally at \$0.0040 per share — prices between approximately 177% and 344% higher than the closing price of \$0.0009 on that day. (A limit sell order can only be executed at the limit price or higher.)

46. On January 28, 2021, the sell orders were executed after the market opened. Minutes later, Gallagher entered a limit order to buy 1 million shares at \$0.0035 per share, and a second buy order around 10:15 am for 1 million shares at \$0.0024 per share, that were quickly executed. (A limit buy order can only be executed at the limit price or lower.) The limit buy orders were seemingly intended to support the share price and to maintain a false appearance of market demand.

47. Later that afternoon, Gallagher sold 1 million shares of SCIE at \$0.0019 per share. Throughout his selling that day, and continuing until well into the evening, Gallagher tweeted multiple touts encouraging his readers to buy SCIE shares. For example, he tweeted, "help please spread this word. We all need to know. \$scie #buyscie", "My \$scie #buyscie order filled averaging up for the team! Buy smart sell smart we all win. FYI haven't sold a share. . . .", and "lets do it! \$scie #buyscie". Gallagher's reference in his tweet to his buy "order filled averaging up for the team" points to the purpose of his placing buy orders, i.e., to support SCIE's share price and create a false appearance of market demand.

48. The following day, January 29, Gallagher sold virtually his entire position in SCIE, selling another 21.5 million shares of the 25 million shares he held, at an average price of about \$0.0015, about 400% over his average purchase price of \$0.0003. Between his sales, Gallagher had one strategically placed buy order entered for 1 million shares at a limit price of \$0.0016, just seconds after having executed a sell order of 1 million shares at \$0.0015. The buy order was presumably intended to give the false appearance of demand in the market, helping to

maintain the price and sufficient liquidity, allowing him to continue selling. Indeed, about 10 minutes later, Gallagher entered a sell order for 3 million shares at $0.0014 per share.

49.     While Gallagher was selling his shares of SCIE on January 29, he tweeted buy or hold touts about SCIE approximately 15 times. For example, Gallagher tweeted: "yes i'm holding $scie. it benefits me in no way to sell. . . ."; "$scie ill hold!"; and "Yes, I'm in $scie it was my team play!".

50.     Gallagher knew these representations were false and misleading, as they misrepresented his own trading activity.

51.     Between January 28 and 29, 2021, Gallagher sold 26,500,000 shares of SCIE, at prices ranging from $0.0011 to $0.0040, for a profit of approximately $35,900.

52.     It appears that Gallagher intended to engage in a second round of scalping of SCIE securities. He tweeted more false information about SCIE. For example, in a tweet dated January 30, 2021, he said that "Someone is paying" SCIE's regulatory fees and attached a misleading re-tweet of a 2016 article, "SpectraScience Announces First Use of WavSTAT4 Optical Biopsy System in Spain", implying that SCIE had current operations. He also retweeted, "$SCIE wavstat4 technology is distributed by Pentax throughout Europe", falsely implying that SCIE had profitable, current business operations.

53.     At the beginning of February, Gallagher bought more SCIE shares, buying 3 million shares on February 4, another 2 million shares on February 9 and another 2 million shares on February 10, 2021.

54.     On the morning of February 11, 2021, the Commission announced it was temporarily suspending trading in SCIE because "certain social media accounts may be engaged in a coordinated attempt to artificially influence the share price of SpectraScience Inc. (OTC:

SCIE), an inactive Minnesota-based corporation."

55.     On February 12, 2021 Gallagher sent a DM to a Twitter user: "scie was as good as i made it."

56.     After the trading suspension ended on February 26, 2021, the company's common stock started trading on OTC Link's Expert Market.[3]  The company has a "Delinquent SEC Reporting" and skull-and-crossbones "Caveat Emptor" designation on the OTC Markets website. In early March 2021, after the trading suspension was lifted, Gallagher sold his remaining shares of SCIE at prices that reduced his overall profits from this scheme to approximately $22,000.  On May 17, 2021, the Commission instituted proceedings to deregister the SCIE securities.  The company has failed to respond to the order instituting deregistration proceedings and has been ordered to show cause why it should not be found in default and deregistered.

## III.     GALLAGHER'S PDPR SCALPING SCHEME

57.     Gallagher made approximately $116,000 in profits by engaging in a scheme to scalp shares of Marathon Group Corp., ("PDPR"), which he traded between February 1, 2021 and March 12, 2021.  Gallagher's scalping of PDPR is also typical of his scalping in other securities listed in Attachment A.

58.     PDPR, f/k/a Pediatrics Prosthetics, Inc., is a Wyoming corporation headquartered in Waterbury, Connecticut.  PDPR's securities are not registered with the Commission.  PDPR's common stock was quoted and traded on OTC Link under the ticker symbol PDPR, until the Commission suspended trading in its securities on February 19, 2021.

59.     According to its most recent press release, dated September 5, 2019, PDPR was

---

[3] Once a trading suspension ends, quoting and trading may resume in the "grey market" or on non-exchange venues, such as OTC Link's Expert Market tier, which limits the publication of unsolicited quotes to broker-dealers rather than to the general public.

"engaged in web property development" and, through a subsidiary, had just entered the cannabis industry with three new products for people and pets. PDPR's most recent quarterly financial information submitted to OTC Markets, for the period ending June 30, 2019, was posted in August 2019. Since 2001, the company changed its name three times, adopting its current name in 2011.

60.     On February 1, 2021, Gallagher sent a DM to a Twitter account: "pdpr right?" That day Gallagher bought approximately 21 million shares of PDPR for prices between $0.0009 and $0.0013 per share. He also sold one million shares of PDPR at $0.0015.

61.     On February 2, 2021, Gallagher bought another 34.5 million shares of PDPR for prices between $0.0012 and $0.0017 per share.

62.     On February 3, 2021, Gallagher sent several DMs to select Twitter associates, privately advising them to load up on PDPR in the morning. These private messages included: "pdpr keep that under wraps" and "PDPR will be good today. id suggest go big. no noise out loud yet. between us."

63.     That day, Gallagher also began sending at least eight buy tweets to his followers and public viewers touting PDPR, including, for example, "Great market day! For all those that say @AlexDeLarge6553 pumps and dumps can kiss my ass! $pdpr up 164% 100% after alert!" and "$PDPR! MY NEW #1 GET IT BEFORE CLOSE!! . . . ". Gallagher bought 1 million shares of PDPR but sold over 8 million shares of PDPR while tweeting buy recommendations that day.

64.     On February 4, 2021, Gallagher sent approximately thirteen more public tweets touting PDPR, including: "LOOK AT $PDPR ALERTED EARLY YESTERDAY!! NO PUMP AND DUMP HERE!" That day, despite his public tweets assuring his followers and readers that

he was not engaged in a pump and dump, Gallagher in fact sold more than 6.6 million of his PDPR shares at prices ranging from $0.0038 to $0.0043 per share, generating profits of approximately $17,700.00.

65.     Gallagher knew these representations were false and misleading, as they misrepresented his own trading activity.

66.     Again, Gallagher's buy recommendations to his Twitter followers and viewers were clearly material, as evidenced by the responses of certain followers to one of his February 4, 2021 tweets to buy PDPR, which included the following: (1) "Im in"; (2)"I'm in 😀🙈🙌;" and (3) "I was a newbie a few months ago, but u were one of the first stock related profiles I followed."

67.     On February 5, 2021, Gallagher continued to tout PDPR with at least seven more tweets, including, "IF YOU SELL $PDPR YOUR DUMB!" and "$PDPR READ-BUY=GET RICH!!".  That day, Gallagher sold approximately 24.3 million shares of PDPR at prices ranging from $0.0044 to $0.0054 per share, generating profits of approximately $89,000.

68.     Gallagher continued to tout PDPR on Twitter from February 6 through February 11, 2021, such as, "$pdpr is great and one of my favs long holds ill be adding all dips!"  ("dips is understood to mean a momentary decline in price per share) and ". . . $pdpr alerts fire!!" while selling approximately 3.8 million more shares of PDPR on February 9, 10 and 12, 2021 at prices ranging from $0.0030 to $0.0042 per share, generating profits of approximately $8,700.

69.     On February 18, 2021, the Commission announced the temporarily suspension of trading in PDPR securities "because of questions regarding the accuracy and adequacy of information in the marketplace about the Company and the market for its securities.  Since late January 2021, PDPR's share price and trading volume have increased in the absence of any

publicly available news or current information from the Company, and certain social media accounts may be engaged in a coordinated attempt to artificially influence PDPR's share price."

70.     After the Commission's trading suspension ended on March 4, 2021, the company's common stock started trading on OTC Link's Expert Market. The company has a "Dark or Defunct" and skull-and-crossbones "Caveat Emptor" designation on the OTC Markets website. After the trading suspension was lifted, Gallagher sold his remaining shares of PDPR at prices that reduced his overall profits from this scheme to approximately $116,000.

## IV.     GALLAGHER'S SCALPING AND MANIPULATIVE TRADING IN SPOM

71.     SPO Global, Inc. ("SPOM") is a Delaware corporation headquartered in China whose common stock is quoted on OTC Link under the ticker symbol SPOM. The company's business is described on OTC Markets to include sales of medical software and equipment.

72.     Between February 2020 and February 2021, Gallagher engaged in a manipulative trading scheme that included multiple instances of scalping shares of SPOM, earning profits of approximately $280,000.

73.     For example, during May 2020, Gallagher sold over 1.5 million shares of SPOM while tweeting hundreds of touts encouraging his Twitter followers and public viewers to buy SPOM.

74.     On May 5, 2020, the day before selling SPOM shares, for instance, he tweeted, "$spom just a thought if we tweet enough. $spom will trend!  you think that would get attention? just a thought!" and "all ya gotta do is hold! and $spom will happen".

75.     On May 6, 2020, when Gallagher was selling shares of SPOM, he publicly tweeted multiple replies to other Twitter users telling them to buy or hold their shares, including, "$spom is #gold who sells when its going up!" and "$spom plenty of room to grow lets get buy!

come on whos in!!!" and "I'm not selling this thing isn't stopping up list soon, jump in tomorrow it got peoples attention today. go $spom easily going over a buck".

76.     Gallagher continued to sell shares of SPOM from May 7, 2020 through May 20, 2020, while tweeting multiple buy touts, and not disclosing his selling, including publicly tweeting a response to another Twitter user: "Harry, I demand you buy $spom no matter how little you buy. if you like money. I wanna see you rich!"

77.     Gallagher also engaged in manipulative trading of SPOM by repeatedly marking the close at the end of July 2020.  Specifically, between July 23, 2020 and July 31, 2020, Gallagher entered buy limit orders above the offer price (the price at which sellers were willing to sell their shares) just prior to the market close, with the intent to manipulate SPOM's end of day ("EOD") adjusted closing price.

78.     Just prior to the close of trading on July 23, July 27, and July 28, 2020, Gallagher placed approximately eighteen EOD limit buy orders of SPOM at or above the offer price, with the intent of raising the adjusted closing price.  For example, on July 23, 2020, between 3:54:39 p.m. and 3:59:52 p.m., Gallagher entered five buy SPOM limit orders above the offer price, which were executed shortly thereafter; on July 27, 2020, at 3:59:38 p.m., Gallagher entered three buy SPOM limit orders above the offer price, which were executed shortly thereafter; and on July 28, 2020, between 3:56:07 p.m. and 3:59:39 p.m., Gallagher entered ten buy SPOM limit orders above the offer price, which were executed shortly thereafter.

79.     Gallagher's EOD timing of these buy orders at limit prices above the market price indicates that his intent was to artificially raise the price per share of SPOM.

80.     Gallagher's manipulative EOD trading was detected by his broker (Broker A), who emailed him on July 29, 2020.  The email had the subject line "Possible manipulative

trading in your account" and said that, between July 23 and July 28, 2020, bids were executed in Gallagher's account "which had the effect of raising the closing price of [SPOM]. This activity may be considered marking the close by regulators."

81.     Despite this email from Broker A, on July 29 and July 30, 2020, Gallagher again entered approximately thirteen EOD buy limit orders at or above the offer price.

82.     Gallagher engaged in these trades with the specific intent that his EOD limit order would artificially raise the price per share of SPOM, as reflected by one of his public tweets attempting to enlist the help of his Twitter followers and readers to manipulate SPOM's closing price on July 29, 2020: "Hey traders can you guys buy $spom if it moves 1 penny I'll be green. Lets keep the green streak alive! Thank you in advance. . 175 is a great buy price FYI".

83.     By exhorting his followers: "Lets keep the green streak alive!" Gallagher appears to be telling his followers that if his scheme to mark the close is successful, SPOM's market price will close higher ("in the green") than the previous day.

84.     On July 29, 2020 at 3:32 p.m., Gallagher again showed his intent to manipulate SPOM's closing price when he publicly tweeted, "I'll be hitting $spom at .17 come join me move this. EOD [end of day]". Between 3:51:58 p.m. and 3:59:49 p.m. that same day, Gallagher entered eight EOD SPOM buy limit orders at $0.17, which was above the offer price. Gallagher's orders were filled at the lower market price: his first limit order to buy 5,000 shares of SPOM at $0.1700 was filled at $0.1497 and his final buy limit order for 20,000 shares of SPOM at $0.1700 was filled at $0.1618, indicating that his EOD buy limit orders moved SPOM's EOD price. SPOM's adjusted closing price on July 29, 2020 was $0.1579, also indicating that his EOD buy limit orders moved SPOM's EOD price. On this day, there was no current news to otherwise account for SPOM's increase in its adjusted closing price.

85.    On July 30, 2020 ,between 3:49:27 p.m. and 3:59:15 p.m., Gallagher entered five EOD SPOM buy limit orders for 25,000 shares — at and above the market price — in an attempt to manipulate the stock's price by marking the close.  The orders were executed shortly thereafter, before the market close.

86.    On the morning of Friday, July 31, 2020, Broker A sent a second notification to Gallagher, stating, "Between 7/29/2020 and 7/30/2020 [Gallagher's account] established a pattern of trading that could potentially be viewed as manipulative by outside regulators."

87.    Nonetheless, on July 31, 2020, Gallagher — yet again — entered two EOD limit orders above the offer price, to mark the close.  At 3:56:17 p.m. that day, Gallagher entered a buy limit order for 10,000 shares of SPOM at $0.1600, which was executed at the lower market price of $0.152.  At 3:59:27 p.m., Gallagher entered a buy limit order for 3,000 shares of SPOM at $0.1600, which immediately executed at the lower market price of $0.1537.  SPOM's adjusted closing price for the day was $0.1537.

88.    Broker A emailed Gallagher the following Monday, August 3, 2020, with a third warning that his trading in SPOM on July 31 appeared "as an attempt to uptick/stabilize the stock price and/or mark the close."  Broker A then temporarily restricted Gallagher's account to liquidating transactions only.  On August 12, 2020, Gallagher publicly tweeted: "Always love waking to my [Broker A] account restricted do to stock manipulation! Who would try to move $spom EOD not me!"

89.    Shortly after this warning from Broker A, Gallagher resumed scalping shares of SPOM.  From August 5, 2020 through September 15, 2020, for instance, Gallagher sold over 1.3 million shares of SPOM, all the while urging others to buy SPOM in tweets, DMs and through message boards in coordination with an associate.  For example, on August 4, 2020, Gallagher

publicly tweeted, "$spom run has started! i think we see green every day for many days! load up! $spom ers". And, on August 5, 2020, when he was selling shares of SPOM, Gallagher sent a DM to a Twitter user, "BUY ALL THE SPOM YOU CAN".

90.     On August 9, 2020, Gallagher sent a private message to an associate, "i have a spom army here". The associate responded via DM, "I'll contact my IHUB friends and hit 30 boards for SPOM". (IHUB is understood to be a stock message board). Gallagher answered, "alright get the boys to push spom for a week . . . ."

91.     On August 25, 2020, just before the market opened, Gallagher tweeted a red Alert: "$SPOM BUY!!! ALERT!!1" (with a flashing GIF red siren ALERT) and, at noon that day, Gallagher tweeted a reply to a Twitter user who asked Gallagher for guidance on when to buy and sell SPOM: "i buy almost every dip and sell small on the rips (HAVENT SEEN A RIP IN A WHILE) into the ask not to hurt shareholders." ("Rip" is understood by promoters such as Gallagher to refer to a rise in share price after a sharp decline). Gallagher did not disclose that, in reality, he had been selling SPOM for weeks and continued selling SPOM that same afternoon.

## V.     GALLAGHER'S ADDITIONAL AND ONGOING SCALPING ACTIVITY

92.     As summarized in Attachment A, Gallagher has engaged in scalping in connection with 60 issuers. With respect to each issuer, Gallagher failed to disclose his intent to sell the Target Security and his actual sales of the Target Security — at the very time that he was recommending to his followers and other Twitter viewers that they buy the stock.

93.     Gallagher's scalping activity has continued through the fall of 2021 and is ongoing. For example, on June 30, 2021, Gallagher tweeted a red Alert, "$dpls alert buy again on news from trips to 8 cents this isn't stopping. LOI news!" Gallagher attached a flashing red

"ALERT!!!!" GIF and a tweet from the company he was touting, DarkPulse Inc., incorporated in Delaware and headquartered in New York, New York. That same afternoon, Gallagher sold 60,000 shares of DPLS.

94. Gallagher continued to sell shares of DPLS through July 28, 2021, while tweeting multiple touts, such as including DPLS on his lists of recommended buys and tweeting, falsely, on July 17, 2021 (two days after he sold 50,000 shares of DPLS and ten days before selling another 50,000 shares), that he was "Buying more!" Gallagher's profits from scalping DPLS are approximately $83,778, since he began trading the stock in August 2020.

95. On September 9, 2021, Broker A informed Gallagher that it was terminating its relationship with him; closing his trading account effective October 9, 2021; immediately preventing him from making new stock purchases; restricting his account to just liquidating transactions; and advising him that it would not allow him to open a new account in the future.

96. Despite these warnings, Gallagher brazenly continued to engage in scalping in his Broker A account by tweeting about and selling shares that he already held in that account. For example, Gallagher continued to scalp shares of Astra Veda Corporation ("ASTA"), a Wyoming corporation headquartered in Aurora, Colorado, whose common shares are quoted on OTC Link. From September 2, 2021 through September 28, 2021, Gallagher sold 5,000,000 shares while tweeting dozens of buy touts such as, "Be nice to each other and buy . . . $asta . . .", "Did you panic sell? I didn't!" and "$asta just buy the OTC gold". He made approximately $46,500 in profits scalping this stock.

97. Gallagher also continued to scalp shares of Business Warrior Corporation, ("BZWR"), a Wyoming corporation headquartered in Las Vegas, Nevada, whose common shares trade on OTC Link, which he traded from January 7, 2021 through at least September 20, 2021.

98.     Most recently, as part of this scheme, from September 14 through September 20, 2021, Gallagher tweeted approximately sixty touts, including, the day before he started selling, "Team $bzwr know what you own! Get it! Hold it!"  Over this same period, Gallagher, undisclosed, sold over 2.6 million shares of BZWR.  From January 2021 through September 2021, Gallagher made approximately $155,000 in profits scalping this stock.

99.     Gallagher also previously engaged in manipulative trading to mark the close of BZWR.  For example, on March 3, 2021, Gallagher sent a private DM to an associate: "how much bzwr you have" adding, "i can move it 10 cents eod".  The associate replied, "I can slap end of day too".  (This is understood to be the associate agreeing to also place EOD buy limit orders along with Gallagher's EOD orders to manipulate the day's closing price).  Seconds before the market closed, Gallagher placed two buy limit orders.  Gallagher repeated this manipulative trading by placing multiple EOD buy BZWR limit orders on at least March 5, 2021 and March 9 through 11, 2021.

100.    In addition, on September 9, 2021, the same day that Broker A told Gallagher that it was shutting down his account, Gallagher opened a trading account at Broker B, stating that he intended to use the account for "active/day trading."  As of October 14, 2021, that account has approximately 40 stocks in it, with a market value of approximately $1 million.  Gallagher has continued to engage in scalping in that account, undeterred by Broker A's warnings and termination of his account.

101.    For example, as recently as October 12 and the morning of October 13, 2021, Gallagher sent multiple tweets encouraging his Twitter followers and public viewers to buy a stock with the ticker AHFD ("Active Health Foods Inc.").  The afternoon of October 13, 2021, Gallagher sold that stock, reaping a quick $1,800 profit.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

102.  The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 101.

103.  Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

104.  By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 9(a)(2)

105.  The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 101.

106.  Defendant, directly or indirectly, alone or with one or more other persons: (1) effected a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security; (2) creating actual or apparent active trading in such

security, or raising or depressing the price of such security; (3) for the purpose of inducing the purchase or sale of such security by others.

107.    By reason of the foregoing, Defendant, directly or indirectly, alone or with one or more other persons, violated and, unless enjoined, will again violate Exchange Act Section 9(a)(2) [78i(a)(2)].

### THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

108.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 101.

109.    Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

110.    By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining

and enjoining Defendant and each of his respective agents, servants, employees, attorneys and other persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from any ongoing and future violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 9(a)(2) [15 U.S.C. § 78i(a)(2)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

An Order directing the Defendant, and each of his financial and brokerage institutions, agents, servants, employees, attorneys-in-fact, and other persons in active concert or participation with him who receive actual notice of such Order by personal service, facsimile service, or otherwise, to hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the Defendant, up to $6.9 million, whether held in his name or for his direct or indirect beneficial interest, wherever situated;

## III.

An Order providing that the Commission may take expedited discovery;

## IV.

An Order temporarily and preliminarily enjoining and restraining the Defendant, and any person or entity acting at his direction or on his behalf, from destroying, altering, concealing or otherwise interfering with the access of the Commission to relevant documents;

## V.

A Final Judgment ordering Defendant to disgorge all ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

## VI.

A Final Judgment ordering Defendant to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

## VII.

A Final Judgment permanently prohibiting the Defendant from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

## VIII.

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: New York, New York
October 26, 2021

*Richard R. Best*

RICHARD R. BEST
REGIONAL DIRECTOR
Lara S. Mehraban
Michael D. Paley
Kevin P. McGrath
Thomas W. Peirce (not admitted to SDNY)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
212-336-0533 (McGrath)
Email: mcgrathk@sec.gov

# Attachment A: Chart of Gallagher's Profits from Scalping 60 Issuers

| | Issuer | First Trade Date | Last Trade Date Analyzed | Profit as of last trade date |
|---|---|---|---|---|
| 1 | HDII | 12/24/2019 | 2/16/2021 | $78,203.22 |
| 2 | SPOM | 2/18/2020 | 2/24/2021 | $288,876.38 |
| 3 | TLSS | 4/29/2020 | 1/25/2021 | $44,612.62 |
| 4 | INQD | 5/22/2020 | 2/18/2021 | $36,310.45 |
| 5 | UAPC | 6/14/2020 | 2/26/2021 | $35,095.71 |
| 6 | CGLD | 6/26/2020 | 7/24/2020 | $13,314.60 |
| 7 | ENZC | 7/14/2020 | 3/19/2021 | $159,811.62 |
| 8 | DSGT | 7/14/2020 | 11/25/2020 | $20,501.32 |
| 9 | JADA | 7/20/2020 | 1/13/2021 | $4,689.82 |
| 10 | XTRM | 7/28/2020 | 2/26/2021 | $36,117.24 |
| 11 | EVUS | 8/5/2020 | 11/12/2020 | $2,663.99 |
| 12 | GLCO | 8/16/2020 | 8/19/2020 | $16,040.68 |
| 13 | CMGO | 8/25/2020 | 12/8/2020 | $6,000.05 |
| 14 | CBBT | 8/26/2020 | 2/26/2021 | $84,566.91 |
| 15 | CBDD | 8/26/2020 | 2/18/2021 | $36,835.16 |
| 16 | DPLS | 8/31/2020 | 7/28/2021 | $83,778.74 |
| 17 | COUV | 10/9/2020 | 2/25/2021 | $41,471.76 |
| 18 | BRNW | 10/27/2020 | 2/26/2021 | $29,761.86 |
| 19 | TSNP | 11/10/2020 | 2/5/2021 | $298,861.66 |
| 20 | LFER | 11/23/2020 | 2/17/2021 | $15,846.32 |
| 21 | AFOM | 11/30/2020 | 1/19/2021 | $46,714.35 |
| 22 | EHOS | 12/3/2020 | 2/19/2021 | $21,463.65 |
| 23 | SCIE | 12/6/2020 | 3/5/2021 | $22,032.66 |
| 24 | ALPP | 12/8/2020 | 3/11/2021 | $471,158.83 |
| 25 | DCLT | 12/9/2020 | 3/5/2021 | $7,009.55 |
| 26 | MEDT | 12/10/2020 | 3/19/2021 | $10,248.30 |
| 27 | CSLI | 12/14/2020 | 2/19/2021 | $11,754.96 |
| 28 | BNGO | 12/17/2020 | 2/4/2021 | $96,714.96 |
| 29 | BMIX | 12/21/2020 | 2/18/2021 | $56,492.79 |
| 30 | PTTN | 12/21/2020 | 2/17/2021 | $23,318.52 |
| 31 | GTLL | 12/24/2020 | 3/5/2021 | $27,926.90 |
| 32 | BLSP | 12/29/2020 | 3/15/2021 | $47,950.00 |
| 33 | GHST | 1/4/2021 | 1/7/2021 | $10,364.28 |
| 34 | EVTI | 1/6/2021 | 2/19/2021 | $24,172.77 |
| 35 | BZWR | 1/7/2021 | 9/20/2021 | $155,749.44 |

|    | Issuer | First Trade Date | Last Trade Date Analyzed | Profit as of last trade date |
|----|--------|------------------|--------------------------|------------------------------|
| 36 | LMFA | 1/8/2021 | 1/29/2021 | $41,407.71 |
| 37 | CHNC | 1/11/2021 | 2/19/2021 | $46,865.51 |
| 38 | ATOS | 1/19/2021 | 2/9/2021 | $53,450.00 |
| 39 | ARST | 1/19/2021 | 2/26/2021 | $14,151.72 |
| 40 | TSOI | 1/20/2021 | 3/5/2021 | $27,954.94 |
| 41 | SHOM | 1/25/2021 | 2/18/2021 | $46,571.25 |
| 42 | INND | 1/27/2021 | 2/19/2021 | $30,028.28 |
| 43 | PDPR | 2/1/2021 | 3/12/2021 | $116,347.77 |
| 44 | NTLK | 2/1/2021 | 2/19/2021 | $36,919.87 |
| 45 | PHBI | 2/1/2021 | 2/26/2021 | $33,714.91 |
| 46 | TXTM | 2/4/2021 | 8/9/2021 | $86,590.20 |
| 47 | IPWG | 2/5/2021 | 3/12/2021 | $64,086.90 |
| 48 | BOTY | 2/5/2021 | 2/23/2021 | $36,000.97 |
| 49 | BFCH | 2/8/2021 | 2/26/2021 | $58,652.33 |
| 50 | BBDA | 2/9/2021 | 2/19/2021 | $14,400.29 |
| 51 | AZFL | 2/10/2021 | 3/22/2021 | $6,705.00 |
| 52 | DKGR | 2/10/2021 | 2/19/2021 | $3,582.71 |
| 53 | NOHO | 2/23/2021 | 2/23/2021 | $28,200.00 |
| 54 | DRNK | 2/24/2021 | 3/19/2021 | $11,315.94 |
| 55 | WTII | 4/22/2021 | 8/20/2021 | $110,655.32 |
| 56 | VXIT | 4/29/2021 | 9/9/2021 | $111,336.50 |
| 57 | ASTA | 7/27/2021 | 9/28/2021 | $46,500.00 |
| 58 | CGAC | 10/8/2021 | 10/13/2021 | $600.00 |
| 59 | AHFD | 10/12/2021 | 10/13/2021 | $1,700.00 |
| 60 | GEGP | 10/13/2021 | 10/13/2021 | $800.00 |
|    |        |          |           |  |
|    |        |          |           | **$3,394,970.19 TOTAL** |