# EXHIBIT C

14 CV 1740

Michael J. Roessner, #MR4195
Matthew P. Cohen
Stephen L. Cohen
J. Lee Buck, II
John P. Lucas
Andrew B. McFall

SECURITIES AND EXCHANGE COMMISSION
100 F Street N.E.
Washington, DC 20549-4030
Tel: (202) 551-4347

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

          v.

JOHN BABIKIAN,

                              Defendant.

No. 14 Civ. _____

COMPLAINT

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.     This case involves a type of securities fraud known as "scalping." A Defendant illegally "scalps" securities when that Defendant (i) purchases shares of a security for his own account prior to recommending or touting that very security to others, (ii) does not disclose in the tout the full details of his ownership of the shares and his plans to sell them, and (iii) proceeds to sell his shares following the tout's dissemination, and into the share price and trading volume increases triggered by his tout.

2.      Beginning at approximately 2:30 p.m. (Eastern) on Thursday, February 23, 2012, an affiliated Internet-based platform of microcap promotion websites registered and directly and indirectly controlled by Defendant John Babikian caused touting materials to be widely disseminated over the Internet concerning America West Resources Inc. (OTC: AWSR) ("America West"), a Nevada corporation whose stock was quoted on the OTC Link. These touting materials said things like, "Brand new pick coming March 1st!" and identified that "pick" as "AWSR," which was the ticker symbol for America West.

3.      Babikian defrauded investors by failing to sufficiently disclose in these touting emails material information, to wit that he held a large position in the America West stock and intended to immediately liquidate as much of it as he could that very same day into the rise in stock price and trading volume caused by his touts. Babikian then immediately proceeded, in the 90 minutes remaining after the touts' dissemination that very same trading day, to sell over 1.3 million shares of America West stock into the share price and trading volume rises triggered by his touts, for ill-gotten gains in excess of $1.9 million. Simply put, Babikian illegally scalped America West.

4.      Prior to the issuance of these touts, America West was a low-priced, thinly traded stock: Its closing price on February 22, 2012 had been $.29. On February 23rd, there had been no trading volume whatsoever in America West's stock until after the touts were disseminated at approximately 2:30 p.m. (Eastern). In the weeks leading up to February 22, America West's trading volume was often zero or near zero and never more than tens of thousands of shares. The touts, however, triggered immediate and dramatic increases both to America West's share price and to its trading volume, the former

reaching a high of $1.80 before closing at $1.29, and the latter exceeding 7 million shares. It was these rises that Babikian immediately exploited by selling over 1.3 million shares of America West at an average price of more than $1.38, and effecting these trades through a Swiss bank, Zurich-based Frankfurter Bankgesellschaft (Schweiz) ("Frankfurter Bank"), to which Babikian had methodically transferred his shares over many months.

5.    By the conduct described herein, Babikian violated the anti-fraud provisions of the federal securities laws, and will continue to violate those provisions unless restrained or enjoined by this Court. Accordingly, the Commission seeks injunctive relief, disgorgement of ill-gotten gains, prejudgment interest, civil penalties and other appropriate and necessary equitable and ancillary relief.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to Securities Act Sections 20(d)(1) and 22(a) [15 U.S.C. §§ 77t(d)(1) and 77v(a)] and Exchange Act Sections 21(d), 21(e), 21A and 27 [15 U.S.C. §§ 78u(d), 78u(e), 78u-1 and 78aa].

7.    Babikian, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails or of the facilities of a national securities exchange, in connection with the acts, practices and courses of business alleged herein, certain of which occurred within the Southern District of New York.

8.    Venue in this district is proper under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the acts, practices, transactions and courses of business constituting the violations alleged herein occurred within the Southern District of New York.

## THE DEFENDANT

9. **John Babikian**, 26, is a citizen of Canada who, on information and belief, also holds passports issued by Lebanon, Nevis and Guatemala. Formerly a resident of Montreal, Babikian left Canada in 2012 in the wake of tax evasion charges by Canadian authorities. His current whereabouts are unknown. .

## OTHER RELEVANT PERSONS AND ENTITIES

10. **AwesomePennyStocks.com ("APS")** was a website that at all relevant times disseminated promotional material over the Internet concerning U.S. microcap stocks. Also at all relevant times, APS's purported owner was Centro Azteca S.A. (see below), an *alter ego* front company of Babikian which also purportedly owned PennyStocksUniverse.com (see below).

11. **PennyStocksUniverse.com ("PSU")** was a website that at all relevant times disseminated promotional material over the Internet concerning U.S. microcap stocks and that, like APS, was at all relevant times purportedly owned by Centro Azteca S.A. (see below), an *alter ego* front company of Babikian.

12. **Centro Azteca S.A. ("Centro")** was, at all relevant times, the registrant for the APS and PSU domains and a microcap stock promotion company that variously described itself as headquartered in Belize or Singapore, and that distributed blast emails promoting U.S. penny stocks via APS and PSU email newsletters. Centro was, in fact, an *alter ego* front company of Babikian.

13. **America West** is a Nevada corporation headquartered in Salt Lake City, Utah that mines and sells low-sulfur coal primarily to U.S. utility companies. America West's common stock is registered with the Commission pursuant to Exchange Act Section

4

12(g). Currently and at all relevant times, America West common stock qualified as a penny stock as it did not meet any of the exceptions from the definition of penny stock contained in Rule 3a51-1 of the Exchange Act [17 C.F.R. § 240.3a51-1]. At all relevant times, America West was quoted on the OTC Link under the ticker symbol AWSR. America West since has declared bankruptcy and is now quoted on the OTC Link under ticker symbol AWSRQ.

14. **iContact LLC ("iContact")** was, at all relevant times, an email service provider in the mass email distribution business. iContact's email service was used to disseminate via email the February 23, 2012, APS and PSU newsletters touting America West described below.

15. **Namecheap.com**, at all relevant times, was an Internet domain registration company. The original Internet domain registrations of APS and PSU, as well as those registrations' renewals, were effected through Namecheap.com.

16. **Brown Brothers Harriman ("BBH")**, at all relevant times, was a broker-dealer registered with the Commission and headquartered in Manhattan, New York.

17. **John Thomas Financial**, at all relevant times, was a broker-dealer registered with the Commission and headquartered in Manhattan, New York.

18. **Middle Bay Trade Ltd. a/k/a Middlebay Trade Ltd. ("Middle Bay")** is an *alter ego* front company of Babikian. Middle Bay is a Seychelles corporation headquartered in Nassau, Bahamas, of which Babikian has, at all relevant times, held himself out as president.

19. **Vertical International Relief Fund ("Vertical")** is an *alter ego* front company of Babikian. Vertical is a Wyoming purported non-profit corporation organized

5

on October 29, 2012, of which Babikian has at all relevant times held himself out as "chief asset manager."

20. **Oriwa Villas Ltd. ("Oriwa")** is an *alter ego* front company of Babikian. Oriwa is purportedly a Guatemalan entity headquartered at Babikian's former residence in Los Angeles, which he still owns.

## FACTS

### *BABIKIAN CONTROLS APS, PSU AND CENTRO AZTECA*

21. The relevant touts detailed herein were issued via APS and PSU email newsletters, which APS's and PSU's purported owner, Centro Azteca, used iContact to disseminate.

22. At all relevant times, Babikian exercised control over APS, PSU and Centro Azteca. Among other things,

    a. Babikian was the original registrant of APS's and PSU's Internet domains, having used one of his own personal email addresses to effect the original registrations of those domains through Namecheap.com in 2009, and listing his personal credit card in connection with his Namecheap.com account;

    b. On information and belief, Babikian effected the next two annual renewals of APS's and PSU's Internet domains' registrations – in October 2010 and October 2011 – through Namecheap.com, using an account whose contact was Centro Azteca, and for which Defendant Babikian was listed as a paying party;

    c. Defendant Babikian used his PayPal account, associated with one of his personal email addresses, to pay for the October 2011 annual renewal of

6

APS's and PSU's Internet domains' registrations, again effecting this renewal through an account at Namecheap.com whose contact was Centro Azteca;

   d. Defendant Babikian's personal credit card was used to pay for more than 470 emails that Centro Azteca used iConnect to disseminate during the period prior to the February 23, 2012 touts of America West;

   e. Centro Azteca's account at iContact was accessed repeatedly between January 14 and May 2, 2012, from the very same Internet Protocol address ("IP address") as was used to access Defendant Babikian's personal brokerage account at Interactive Brokers on each of the two occasions when it was accessed online during that same period;

   f. On February 23, 2010, the day of the America West touts, Centro Azteca's account at iContact was accessed from the very same IP addressed reference in the preceding subparagraph, within minutes of the dissemination of the first touts; and

   g. Centro Azteca's account at iContact was accessed on May 20, 2012 from a different IP address, but that same IP address was also used, that same day, to access Babikian's personal account at Interactive Brokers.

23. As detailed below, Babikian also immediately exploited the dramatic increases to America West's share price and trading volume following Centro Azteca's dissemination, via iContact, of the APS and PSU touts of America West, which themselves were issued only after Babikian had first positioned his America West stock to be sold surreptitiously through a Swiss bank's omnibus account.

7

### BABIKIAN POSITIONS HIS AMERICA WEST STOCK FOR SALE

24. During the months leading up to February 23, 2012, Babikian took steps to position his America West share holdings to be sold. Those holdings totaled at least 1,466,667 America West shares, all of which Babikian had acquired directly from the company – 966,667 via convertible loans and another 500,000 via private placement.

25. Between May 4 and June 8, 2011, t Babikian deposited three certificates comprising all of the aforementioned holdings to a brokerage account in his name at John Thomas Financial, then a Manhattan-based broker-dealer registered with the Commission.

26. By January 20, 2012, after their restrictive legends were removed, Babikian had directed all of these shares to be transferred to Frankfurter Bank, where Defendant Babikian held at least one account in the name of an *alter ego* front company. Manhattan-based registered broker-dealer Brown Brothers Harriman ("BBH") served as custodian for these shares.

### THE APS AND PSU TOUTS OF AMERICA WEST ARE DISSEMINATED

27. Beginning at approximately 2:30 p.m. (Eastern) on Thursday, February 23, 2012, Centro Azteca's account at iContact disseminated APS and PSU newletters via email to a total of more than 700,000 addresses. These emails' subject line read, "Brand new pick coming March 1st!" and their body, which contained the newsletter, bore the prominent headline, "Today's pick is: AWSR," which was the ticker symbol for America West.

28. These touts each bore a disclaimer, which stated in part that the issuing newsletter's website (PennyStocksUniverse.com or AwesomePennyStocks.com, respectively), "is owned and operated by Centro Azteca S.A.", and further, that "[the

8

respective issuing newsletter's website], its operators, owners, employees and affiliates may have interests or positions in equity securities of the companies profiled on this website, some or all of which may have been acquired prior to the dissemination of this report, and may increase or decrease these positions at any time."

29. The touts were materially misleading because they did not disclose, among other things:

    a. that one of each website's "operators, owners, employees and affiliates," Babikian, in fact already held a position in America West stock;

    b. that said preexisting position of Babikian in America West stock was substantial, consisting of at least 1,466,667 shares;

    c. that Babikian had already caused those shares to be poised for immediate sale, as soon as America West's trading volume allowed for such sale; and

    d. that Babikian—as immediate subsequent events were to show—in fact already planned and intended to sell as many of those shares as he could, into the rise in stock price and volume increases caused by the APS and PSU touts on that very same day.

30. Prior to the issuance of these email touts, America West's stock was both low-priced and thinly traded. America West's trading volume over the prior year averaged, in round numbers, only 15,400 shares per day, with barely 7,000 shares traded in the entire week leading up to February 23. Its closing price on February 22, 2012, the day prior to the touts' dissemination, was $.29. On February 23, 2012, in the time period

9

before the issuance of the touts at approximately 2:30 p.m. (Eastern), there were *no trades whatsoever* in America West stock.

31. Immediately following dissemination of the touts on February 23, 2012 —in the approximately ninety minutes of trading that remained—more than 7.8 million shares of America West were traded. This was more than double the total volume the stock had traded during the whole of the prior year. During those ninety minutes, America West's share price hit an all-time high of $1.80 before closing at $1.29.

### *BABIKIAN SELLS AT LEAST 1,383,655 AMERICA WEST SHARES*

32. During the approximately 90 minutes of the February 23, 2012 trading day that remained following dissemination of the touts, Frankfurter Bank's omnibus brokerage account sold 1,601,548 America West shares. At least 1,383,655 of these shares, generating proceeds of over $1.9 million, were sold by Babikian.

33. Absent the fraudulent touts, Babikian could not have sold more than a few thousand shares at approximately $.29 per share.

34. Babikian continued to operate the APS platform to disseminate touts of U.S. publicly traded stocks after February 23, 2012. On three separate occasions in the Fall of 2013, the Commission issued orders suspending trading in stocks that were, at the time of these orders, the subject of active and ongoing APS touting campaigns. One of these trading suspension orders specifically referenced concerns "regarding potentially manipulative transactions" in the common stock of the company being touted by APS. *See In the Matter of Press Ventures, Inc.*, File No. 500-1 (Oct. 30, 2013).

10

## FIRST CLAIM

**Violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder**

35. The Commission repeats and realleges Paragraph 1 through 34 of this Complaint as if fully set forth herein.

36. As alleged herein Babikian, directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or with reckless disregard for the truth: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices or courses of business which operated and operate as a fraud or deceit upon purchasers of securities and upon other persons.

37. As part and in furtherance of the fraudulent scheme detailed herein, Babikian, directly or indirectly, singly or in concert, knowingly or with reckless disregard for the truth, engaged in and employed the deceptive devices, schemes, artifices, contrivances, acts, transactions, practices and courses of business and/or made the misrepresentations and/or omitted to state the facts alleged above.

38. By reason of the foregoing, Babikian, singly or in concert, directly or indirectly, has violated, and unless enjoined and restrained will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

11

## SECOND CLAIM
### Violations of Securities Act Section 17(a)

39. The Commission repeats and realleges Paragraph 1 through 34 and 37 of this Complaint as if fully set forth herein.

40. As alleged herein, Babikian, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce and of the mails, knowingly or with reckless disregard for the truth: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operated or operate as a fraud or deceit upon purchasers of securities.

41. By reason of the foregoing, Babikian, singly or in concert, directly or indirectly, violated, and unless enjoined and restrained will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Babikian committed the violations charged and alleged herein.

### II.

Enter an order temporarily restraining and enjoining Babikian, his officers,

12

agents, servants, employees, attorneys and those persons in active concert or participation with him who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Exchange Act Rule 10b-5 [17 CFR 240.10b-5] thereunder.

## III.

Enter an order freezing the assets of Babikian and his alter egos and front companies .

## IV.

Enter an order requiring Babikian and his alter egos and front companies to prepare a sworn accounting to provide an accurate measure of Babikian' unjust enrichment and of his defendant's current financial resources, including an accounting of all the money Babikian and his alter egos and front companies obtained from sales of America West securities on or after February 23, 2012..

## V.

Enter an order prohibiting the movement, alteration, and destruction of books by Babikian and his alter egos and front companies, to protect all remaining documents necessary for full discovery in this matter.

## VII.

Enter an Order of Permanent Injunction restraining and enjoining Babikian, his officers, agents, servants, employees, attorneys and those persons in active concert or

13

participation with him who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Exchange Act Rule 10b-5 [17 CFR 240.10b-5] thereunder.

## VIII.

Enter an Order prohibiting Babikian from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)], and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

## IX.

Enter an Order requiring Babikian to disgorge the ill-gotten gains received as a result of the violations alleged herein, in the amount of $1,915,606 including prejudgment interest of $117,885 thereon.

## X.

With regard to the Defendant Babikian's violative acts, practices and courses of business set forth herein, issue an Order imposing upon him appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], in the amount of $1,915,606.

## XI.

Temporarily restrain and enjoin Defendant Babikian, and any entity that he controls or with which he is affiliated, including but not limited to APS, PSU and Centro Azteca, directly or indirectly, from recommending the purchase of any U.S. publicly

traded or quoted stock, without simultaneously disclosing any plans or intentions to sell such stock within 14 days of the recommendation.

## XII.

Award the Commission the ten percent surcharge permitted under Section 3011 of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3101, et seq.

## XIII

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## XIV.

Grant such other relief as this Court deems appropriate.

Dated: March __, 2014
New York, New York

By: _____
Michael J. Roessner, MR4195
Assistant Chief Litigation Counsel
Attorney for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E., Mail Stop 5631
Washington, D.C. 20549
Tel: (202) 551-4347
Fax: (202) 412-1277
Email: roessnerm@sec.gov