**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

STEVEN M. GALLAGHER, a/k/a "Alexander Delarge 655321,"

Defendant.

No. 1:21-cv-8739-PKC-GWG

---

## [PROPOSED] REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its compliments to the Alberta Court of King's Bench in Calgary in the Province of Alberta, Canada, and requests judicial assistance to compel the attendance of a witness at a deposition and the production of documents to be used in a civil proceeding before this Court in the above-captioned matter. This Court has the authority to grant this Letter Rogatory under 28 U.S.C. § 1781(b)(2).

This Court requests the assistance described herein as necessary in the interests of justice. Plaintiff United States Securities and Exchange Commission ("SEC" or "Requesting Party") requires documents and testimony from Jennifer Rosebrugh ("Rosebrugh"). This Court requests that the Alberta Court of King's Bench permit and, if necessary, compel (i) the production of documents from Rosebrugh and (ii) the appearance of Rosebrugh to give videotaped deposition testimony for use by the Requesting Party and this Court in the full resolution of this action.

I.      **Summary of Action and Rosebrugh's Role**

The SEC filed its Complaint on October 26, 2021, in the United States District Court for the Southern District of New York, against Steven Gallagher ("Gallagher"). The SEC filed an Amended Complaint on April 7, 2022 and a Second Amended Complaint ("SAC") on June 29, 2022. Gallagher was also criminally prosecuted for his conduct with respect to some of the stocks alleged in the SAC. Gallagher was arrested in connection with the criminal proceeding on October 26, 2021, pled guilty to manipulating the market for one of the stocks alleged in the SEC's case on February 25, 2022, and was sentenced on June 27, 2022. Despite resolving the criminal case, Gallagher is litigating these civil proceedings brought against him by the SEC.

In its SAC, the SEC alleges that Gallagher conducted a fraudulent scheme to manipulate the market for microcap securities, primarily by tweeting about microcap stocks to his Twitter followers. From at least September 2019 to October 2021, Gallagher built positions in various microcap stocks, then used his Twitter platform to recommend to his followers that they purchase those stocks, while contemporaneously selling his own shares and not disclosing that fact (a practice historically called "scalping"). On some occasions, he also tweeted false and/or misleading information about not selling shares or about the promoted stocks. For at least one stock, he engaged in multiple instances of manipulative trading by "marking the close," or trading in a way to support or move up the stock price at the end of the trading day, in order to mislead the public about the trajectory of the issuer's stock price. In connection with the stocks alleged in the SAC, Gallagher made net profits of over $3.1 million. His conduct violated United States securities laws, including Section 17(a) of the Securities Act of 1933 ("Securities Act") and Sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. The Defendant largely denied the allegations in an Answer filed on January 22, 2024, though did not deny that Gallagher wrote the Tweets and direct messages cited in the SAC.

Specifically with respect to Rosebrugh, the SAC includes references to her as Associate C. The SAC references Gallagher's communications with Associate C in ¶¶ 177, 290, 318, 322, 324, 347, 382, 447, 679, 681, 682, 712, 723, 726, 727, 829, 948. 952, 962, 964, 966, 969, 972, 976, 1224, 1268, 1271, 1274, 1292, 1316, 1344, 1362, 1690, 1793, and 1843. In the communications, Gallagher acknowledged to Rosebrugh that he was impacting the price of the stocks. See SAC ¶ 829 ("Winks are genius SEC can[]t do anything about a wink lol. Nobody else on Twitter could wink and influence a stock haha it[]s funny. I love it.") As noted in ¶ 290, Gallagher exchanged private messages with Rosebrugh regarding at least 14 different stocks. The messages between Gallagher and Rosebrugh show the two of them planning, together, to impact the price and market for various microcap stocks. This conduct is integral to the SEC's case against Gallagher.

Rosebrugh tweeted on Twitter under the Twitter account name, Canadian Jennifer, using the Twitter handle @cdntradegrljenn. Rosebrugh and Gallagher, communicated extensively on Twitter private messaging about the conduct charged in the SAC. In connection with a search warrant return from Twitter provided to the SEC by the United States Attorney's Office for the Southern District of New York ("SDNY"), between February 11, 2021, the first day of the excerpt of their DMs provided by the SDNY, and March 5, 2021, the last day of data in the search warrant materials, Gallagher and Rosebrugh exchanged about 2,533 direct messages ("DMs"), primarily about manipulating the microcap stock market.

The conduct charged by the SEC continued past March 5, 2021, until Gallagher was arrested in October 2021. The SEC currently only has the complete set of DMs between Gallagher and Rosebrugh for a three-week period covered by the SDNY's search warrant on Twitter. The DMs that the SEC does have between Gallagher and Rosebrugh include Gallagher

telling Rosebrugh, in response to her noting that the price of a stock went up 7 cents, "YES IT WAS ME MOVING IT." Gallagher also told Rosebrugh to have their "group" load specific stocks, presumably to drive up the price in advance of his public tweets about the stock. Gallagher and Rosebrugh coordinated their trading in the relevant tickers in advance of Gallagher's public touts. During a September 2023 voluntary call between Rosebrugh and the SEC Staff, Rosebrugh invoked her right to be represented by counsel in response to questions about the DMs.

The parties are currently engaged in discovery. On February 8, 2024, this Court issued a case-management order requiring the parties to complete fact discovery by July 24, 2024.

Rosebrugh resides in Penhold, Alberta, Canada and has within her possession, custody, or control evidence that is highly relevant to the parties' claims and defenses.

## II. Assistance Required

The assistance of the Alberta Court of King's Bench in Calgary, Alberta, Canada is requested because the testimony of Rosebrugh and the documents sought from her, as described below, are relevant to discovery and necessary for the trial of this case.

The documents and testimony sought from Rosebrugh are not otherwise obtainable by this Court at the trial through this Court's compulsory process.

With respect to the documents, the Requesting Party, as noted above, has received communications between Gallagher and Rosebrugh for a short time period from the United States Attorney's Office for the Southern District of New York ("SDNY"), but is missing communications for much of the relevant time period that Gallagher and Rosebrugh were communicating. The SEC understands that Twitter will not provide the DMs to the SEC in response to a subpoena. The Requesting Party has been seeking, but has thus far failed to obtain, the documents from Gallagher himself. Gallagher provided his initial production, and it does not

4

include any communications with Rosebrugh. Gallagher's counsel has indicated that Gallagher will be providing the communications with Rosebrugh in his possession in his rolling production but the SEC cannot evaluate the completeness of that production until the documents are received. Gallagher's counsel has agreed to receive the entire Twitter search warrant return from the SDNY, in order to supplement his production with respect to Rosebrugh, but the SEC similarly cannot evaluate the completeness of that production until the documents are received. If the SEC is able to satisfactorily obtain the documents from Gallagher, the SEC will withdraw this request with respect to the documents only and will continue its request for deposition testimony.

The Requesting Party reached out to Rosebrugh and sought to obtain an agreement to avoid the letters rogatory process, but Rosebrugh indicated that she will not agree and indicated that formal letters rogatory must be filed first. The Requesting Party intends to attempt to contact Rosebrugh, and intends to attempt to agree on procedures for the production of documents and taking of evidence. The Requesting Party hopes to present the Alberta Court of King's Bench, insofar as possible, with a proposed draft order for enforcement of this Letter Rogatory that will not be opposed and, in any event, limiting insofar as is possible any areas of disagreement that would require resolution by the Alberta Court of King's Bench.

The evidence so obtained will be used by Requesting Party at the trial itself. The evidence sought in Alberta by this Letter Rogatory will assist the ability of this Court to do justice in this case. Therefore, this Court respectfully requests, in the interests of justice, that the Alberta Court of King's Bench issue appropriate orders, subpoenas, or other compulsory process necessary to compel Rosebrugh to both produce the documents described below, and to appear and testify, concerning any issue relevant to the case before this Court.

This Court further requests that the Alberta Court of King's Bench order: the deposition of Rosebrugh to be transcribed by a qualified court reporter; the transcript of the deposition to be authenticated; and the authenticated records to be delivered to counsel for the parties in the litigation before this Court. It also requests that the parties be granted the option to have the testimony videotaped by a qualified videographer. The original transcript of the testimony, and if the testimony is videotaped, the videotapes, should be returned to the parties for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Alberta Court of King's Bench in like cases.

### III. Documents and Witnesses Requested -- Procedures

This Court respectfully requests that the Alberta Court of King's Bench:

1. Cause Rosebrugh to produce the categories of documents requested in the Witnesses and Documents section below at a time to be agreed upon by Rosebrugh and the Requesting Party, but not later than July 3, 2024;

2. Cause Rosebrugh to be summoned to attend an examination for one day (or 7 hours) under oath before a person authorized to administer oaths at such place as may be agreed upon by the witness and the Requesting Party, at a time be to be agreed upon by the witness and the Requesting Party, including by remote video, but no later than the deadline set for the completion of fact discovery in the U.S. action;

3. Cause Rosebrugh to be examined by counsel for the parties to this action on the relevant subject matter within her personal knowledge and, in particular;

   a. Details about her conversations with Gallagher regarding the stocks cited in the SAC, including what he explained about the reason for buying in advance of his public touts about the stocks

    b.    What Gallagher has explained to Rosebrugh about the reason for his Twitter touts of the stocks charged in the SAC

    c.    What Gallagher has explained to Rosebrugh about his practice of selling into his buy recommendations

    d.    Details about the private Twitter chat rooms that Gallagher used to create positive price pressure on stocks before Tweeting about them

    e.    Details regarding direct messages she exchanged with Gallagher, including her use of shorthand or slang in those messages

    4.    Permit the examination to be governed by the *Canada Evidence Act*, the *Alberta Evidence Act*, and the Alberta Rules of Court;

    5.    Permit Rosebrugh to refuse to give evidence only insofar as she has a privilege or duty to refuse to give evidence under the laws of Canada or the United States of America, or pursuant to the order or direction of the Alberta Court of King's Bench; and

    6.    Permit the examination to be videotaped and a verbatim transcript of the examination to be taken.

## IV. **Reimbursement for Costs**

Conduct money to be paid to Rosebrugh in accordance with the witness allowance fee schedule of the Alberta Court of King's Bench will be borne by the Requesting Party.

## V. **Application of Stipulation and Order Governing the Production and Exchange of Confidential Information**

Any evidence provided by Rosebrugh, pursuant to an order enforcing this Letter Rogatory are documents produced in the course of discovery, within the meaning of the Protective Order Concerning Privacy Information entered in the U.S. action (the "Protective Order" (Dkt. No. 96). Rosebrugh shall have all of the rights and protections accorded thereto under the Protective Order.

# WITNESSES AND DOCUMENTS REQUESTED

## VI. Definitions And Instructions

### A. Instructions

This request calls for the production of documents in the possession, custody, or control of Rosebrugh.

Responsive documents should be produced as kept. All attachments and appended or embedded links or files should be produced if any are responsive to any of the below requests. If the witness is not producing documents with respect to any request, she should so state in writing.

### B. Definitions

1. "Rosebrugh," "You" or "Your" means Jennifer Rosebrugh of 146 Norseman Close, Penhold, Alberta, T0M1R0.

2. "Complaint" means the Second Amended Complaint filed by the SEC in this action, *Securities and Exchange Commission v. Gallagher,* No. 21-cv-8739 (PKC) (S.D.N.Y.) (Dkt. No. 58).

3. "Document" includes all written, typed, recorded, or graphic matter, however produced or reproduced, of any kind or description, including originals, non-identical copies and drafts, and all other materials discoverable under Federal Rules of Civil Procedure 26. This definition also includes papers, books, letters, correspondence, e-mails, instant messages, faxes, contracts, agreements, notes, memoranda, inter-office communications, messages, notices, transcripts, meeting minutes, reports, analyses, investigations, recommendations, instructions, opinions, summaries, charts, computer printouts, statements, transcripts, receipts, account statements, evaluations, business records, accounting records, financial statements, billing records, tax records, tax returns, ledgers, invoices, drafts, desk calendars, appointment books,

diaries, date books, organizers, journals, electronically stored information, computer disks or tapes, computer input or output, files, filings, folders, lists, schedules, and all communicative materials of any kind (to include data stored in a computer or other electronic device, data stored on removable magnetic or optical media, backup copies of data, digitized pictures and video, digitized audio, and voicemail).

4. The term "communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether formal or informal, including email or other computerized mail, text messages, instant messages, Twitter direct messages, Twitter private chat messages, correspondence, memoranda, notes, facsimiles, diaries, telephone conversations (whether in recorded form or otherwise), in-person meetings, Documents or files in computer format, and any written Documents concerning any such communications.

5. The term "concerning" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, constituting, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

6. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not

constitute an exclusive, all-encompassing, or exhaustive listing of every type of document responsive to the request.

7. The words "and" "or," and "any" are intended to be construed as necessary to bring within the scope of these requests for production any documents or information that otherwise might be construed to be outside the scope of these requests. Use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun. The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of this Letter Rogatory documents or information that might otherwise be construed to be outside the scope of this Letter Rogatory.

8. "Person" means natural persons, governments or agencies thereof, quasi-public entities, corporations, associations, partnerships, ventures, and any other form of organization. Whenever reference is made to a person, it includes any and all of such person's employees, agents, attorneys, consultants, other representatives, or others acting on that person's behalf.

**VII.   Witness And Documents**

Rosebrugh is an individual living in Penhold, Alberta, Canada, at the following address:

Jennifer Rosebrugh  
146 Norseman Close  
Penhold, Alberta  
CANADA T0M1R0

Rosebrugh has information, documents, and knowledge of relevant facts concerning the conduct at issue in the SAC, and thus:

Testimony

Witness Rosebrugh is to provide testimony in accordance with the procedures stated above.

<u>Document Requests from Jennifer Rosebrugh</u>

Rosebrugh is to provide any documents or communications in her care, possession, or control for the period between September 2019 and the present, concerning: Rosebrugh's communications with Gallagher about 1) any of the stocks charged in the SAC, 2) moving the price of any stock, 3) the SEC's investigation into Gallagher, 4) the SDNY's criminal case against Gallagher, or 5) the instant litigation with the SEC.

_____
THE HON. P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

DATE: April 24, 2024