

September 24, 2024

**By ECF**

The Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007

        Re:  *SEC v. Gallagher*, No. 1:21-cv-08739-PKC

Dear Judge Castel:

      We write on behalf of Defendant Steven M. Gallagher, pursuant to Rule 3.A.iii. of the Court's Individual Practices in Civil Cases, in opposition to Plaintiff Securities and Exchange Commission's (the "SEC") September 18, 2024, pre-motion letter in connection with its anticipated motion for summary judgment [Dkt. No. 111] (the "Pre-Motion Letter"). Summary Judgment for the SEC is not warranted.

**I.    The SEC's Attempt to Assert "Collateral Estoppel" Has No Basis.**

      In October 2021, federal prosecutors charged Mr. Gallagher with securities fraud related to six OTC stocks with losses far exceeding $1 million. The DOJ soon realized that the vast majority of their allegations were incorrect, and as a result, the DOJ dropped their million-dollar case and requested that Mr. Gallagher plead guilty to only a single stock—SCIE—with a trading gain to him of just $21,000. Despite this acknowledgment of the weakness of the DOJ's case, the SEC has trudged on, charging Mr. Gallagher with 58 stocks (including those dismissed by the DOJ) and demands "collateral estoppel" as a result of his plea of guilty to just a single stock. The SEC's request is frivolous.

          *a.  Legal Standard for Collateral Estoppel*

      To prove collateral estoppel, the movant must establish that: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgement on the merits." *SEC v. Tzolov*, No. 08-CV-7699 (SAS), 2011 WL 308274, at *1 (S.D.N.Y. Jan. 26, 2011) (citing *SEC v. Haligiannis*, 470 F.Supp.2d 373, 382 (S.D.N.Y.2007) (quoting *NRLB v. Thalbo Corp.,* 171 F.3d 102, 109 (2d Cir.1999))). When analyzing these factors at the summary judgment stage, the Court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *S.E.C. v. Tandem Mgmt. Inc.*, No. 95 CIV. 8411 (JGK), 2001 WL 1488218, at *7 (S.D.N.Y. Nov. 21, 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Further, the Court's inquiry is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Id*. (internal citations and quotations omitted).

Finally, when collateral estoppel is asserted based on a guilty plea, the party seeking collateral estoppel must show "precisely which facts the plea establishes" and "[w]here there is a plea allocution, … the court must examine the plea allocution in determining whether collateral estoppel applies." *SEC v. Thompson*, No. 14-CV-09126 (ALC), 2019 WL 4747678, at *5 (S.D.N.Y. Sept. 27, 2019) (internal citations and quotations omitted).

> b. *The SEC Cannot Obtain Collateral Estoppel As to 58 Stocks As a Result of a Guilty Plea to One Stock (SCIE).*

As an initial matter, both parties agree that Mr. Gallagher pled guilty to a criminal Information that charged him with *one* count of securities fraud that pertained only to the security SpectraScience Inc. ("SCIE"). *See* September 26, 2023, Order Denying Motion to Dismiss [Dkt. No. 82] at 8-9; *see also* Pre-Motion Letter at 2. Given this, it is unclear how the SEC now argues that Mr. Gallagher's guilty plea should extend to all 58 stocks in the civil Complaint. *See* Pre-Motion Letter at 3. Indeed, Mr. Gallagher did not plead guilty to the other 57 stocks, none of these stocks (except SCIE) are identical to SCIE, and none were *actually* litigated and *actually* decided in the Government's favor. *See Sec. & Exch. Comm'n v. Thompson*, No. 14-CV-09126 (ALC), 2019 WL 4747678, at *7 (S.D.N.Y. Sept. 27, 2019) (The defendant is "only precluded from [relitigating] in accordance with the violations he pleaded guilty to.").

To the contrary, the Government litigated and then *dismissed* the charges regarding at least five of the stocks currently charged by the SEC. To the extent anyone is entitled to collateral estoppel in his favor, it is Defendant. *See id*. (citing *Goodridge v. Harvey Group Inc.*, 728 F.Supp. 275, 279 (S.D.N.Y. 1990) and *Gordon v. Sonar Capital Management LLC*, 116 F.Supp.3d 360, 366 (S.D.N.Y. 2015)) (Where a plea agreement and/or allocution identifies specific entities, statements, occurrences, etc., that plea "does not establish the requisite elements of securities fraud" as to other, non-specified entities, statements, occurrences, etc.). And perhaps more importantly, both the SEC and the DOJ had access to the same evidence, and yet the DOJ charged only a single stock while the SEC charged 58. The DOJ's decision that none of the remaining 57 were meritorious should bind the SEC here. And the SEC's attempt to conflate together SCIE and other stocks has no merit given that he was charged solely with respect to SCIE, with nary a single admission related to other stocks.

This case is nothing like the out of Circuit case cited in the SEC's Pre-Motion Letter, *United States v. Bush*, 944 F3d 189, 196 (4th Cir. 2019), Bush does not involve collateral estoppel from a prior conviction, but instead held that a prior conviction involving a conspiracy was intrinsic evidence of the currently charged crime as it involved the same criminal episode. *See* at *196. Here, Mr. Gallagher has been charged with 58 different stocks, spanning different time periods, involving different amounts of money, different trades, and different tweets. Nothing is the same, and the SEC has not shown that any of these other stocks were litigated in its favor.

None of the remaining cases are analogous here:

- In *United States v. Podell*, 572 F.2d 31 (2d Cir. 1978), the Second Circuit ruled that estoppel applied because, "unlike most guilty plea cases, [defendant's] guilty plea was not entered in an evidentiary vacuum, but rather after the government had presented its entire case and [defendant] had begun to present his own" and "the elements of the charges in the indictment were amply supported in the trial record." *Id*. at *36. Here, in contrast, Mr. Gallagher's guilty plea was very specific, limited to one stock (SCIE) and two tweets. The case did not proceed to trial, and no facts regarding a single other stock were established. This is why Judge Caproni only ordered forfeiture with respect to SCIE. Mr. Gallagher has not had a full and fair opportunity to litigate each of the 58 stocks.

- In *SEC v. Illarramendi*, 732 F. App'x 10 (2d Cir. 2018), the Court affirmed summary judgment based on the district court's determination that defendant's "civil liability was established not only by his guilty plea, but also by his independent inculpatory sworn admissions at the TRO hearing." At *13. The defendant pled guilty to all counts in the indictment and signed a "stipulation of offense conduct," which covered the SEC's case. Here, no independent inculpatory statements exist that expand Mr. Gallagher's plea colloquy to encompass a single other stock.

- In *S.E.C. v. Tzolov*, No. 08 CIV. 7699 SAS, 2011 WL 308274, at *2 (S.D.N.Y. Jan. 26, 2011), the Court applied collateral estoppel where the defendant was "indicted, tried and convicted" following a month long jury trial providing defendant with a "full and fair opportunity to litigate" the issues. At *4. Furthermore, the court held that the issues were "actually decided" in the criminal matter because the criminal indictment and civil complaint alleged the "same fraudulent conduct." *Id*. Here, there was no jury trial, and the criminal Information and plea colloquy have virtually no cross-over other than that both contain SCIE.

The SEC does not present a single case that even remotely approximates the situation here.

    c. *No Efficiency Exists from Preclusion at This Stage*

Collateral estoppel should also be denied because it will not result in any significant time savings for this Court. In that regard, the SEC chose to move for summary judgment based on Mr. Gallaghers very limited and specific plea allocution in the criminal case *after* the close of fact discovery, when virtually every fact witness has refuted the SEC's theory of the case.

"[C]ollateral estoppel involves a balancing of fairness and efficiency: the fairness of ensuring a correct result, weighed against the efficiency of preventing relitigation of a single issue. When the efficiency rationale for collateral estoppel fails ... courts have understandably declined to apply the doctrine." *United States v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) (citing *S.E.C. v. Monarch Funding Corp.,* 192 F.3d 295, 304 (2d Cir.1999)) (quotations omitted); *see also* § 4474 Criminal Conviction as Preclusion in Civil Proceeding, 18B Fed. Prac. & Proc. Juris. § 4474 (3d ed.) (Wright & Miller) ("The Second Circuit has concluded that issue preclusion is possible, but 'should be assumed improper.' The potential for unfairness is so great that a court should feel free to reject preclusion at the threshold if exploration of the elements of preclusion, including fairness, will defeat the potential efficiency of preclusion."). "Consideration of efficiency should be a 'threshold assessment,' and if a court finds that the application of estoppel 'will not promote efficiency, it should feel free to deny preclusion for that reason alone.'" *U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d at 173 (internal citations omitted). Notably, in each of the three cases relied on by the SEC, discussed above, the Government moved for summary judgment near the outset of the case prior to the start of fact discovery. *See Podell*, 572 F.2d at 34; *Tzolov*, No. 08 CIV. 7699 SAS, 2011 WL 308274, at 1; and *Illarramendi*, 732 F. App'x at 11-12.

Here, after significant fact discovery, and after the SEC has served its meritless expert report, the SEC now seeks collateral estoppel for every single stock charged in the Complaint. This promotes no efficiency after virtually everything has been done.

        d. *The SEC Itself is Precluded from Seeking Collateral Estoppel Because It Has Already Conceded That Its Case is Far Different from the Earlier Criminal Proceeding.*

In prior filings, the SEC has conceded (in fact argued) that its case is both unique from and broader than the prior criminal action. Therefore, collateral estoppel based on Mr. Gallagher's guilty plea to one stock does not establish collateral estoppel as to all stocks.

Specifically, in the SEC's motion to compel discovery filed on May 1, 2024 [Dkt. Nos. 100-101], the SEC asserted that it needed the full contents of the Twitter search warrant return obtained by the DOJ (even though it had been provided all of the materials deemed responsive during the DOJ's review) because, according to the SEC, the SEC's case and the criminal Information were *not* the same. The SEC sought portions of the Twitter search warrant return that were relevant to their case and not that of the DOJ, clearly showing that the cases were different. Further, to the extent the SEC alleges that the DOJ did not perform or complete a review of the available warrant materials, this too weighs against the application of collateral estoppel because it proves that the claims were not previously *actually* litigated or *actually* decided.

## II.   The SEC Fails to Assert Any Other Additional Evidence

The SEC's arguments under Section B in its Pre-Motion Letter are purely speculative generalizations not supported by any evidence in the record, which alone shows that the SEC's assertions are mischaracterizations. While the SEC includes many self-serving characterizations of what "the evidence will show" (which is not the standard for summary judgment), the SEC fails to include any actual citations or quotations to said evidence in its Pre-Motion Letter. As such, the assertions in the SEC's Pre-Motion Letter are meaningless at this stage and insufficient to show "that there is no genuine dispute as to any material fact." *See* Fed. R. Civ. P. 56(c). To the contrary, these types of conclusions, allegedly deduced from facts, however, not directly stated or supported by the record, are precisely the type of resolutions that could be found by a reasonable juror and are not reached during summary judgment. *See Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) ("An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

By way of example, Mr. Gallagher submits the below evidence to the Court illuminating some (not all) of the SEC's mischaracterizations of the evidence:

- The SEC states that "Gallagher also repeatedly lied to his followers by telling them falsely that he "never sold a share" of certain stock that he had recommended, and by recommending that his follow[er]s "hold" their stock even while he was actively selling." Pre-Motion Letter at 4. However, some examples of Mr. Gallagher's testimony do not support these characterizations and instead states as follows:

    "Q. You were asked -- the last sort of section here.

    You were asked for a while on direct about terms "haven't sold a share," right?

    A. Right.

    Q. And then you were confronted with the tweet saying "haven't sold a share" or "not selling" and then you were confronted with past stock sales that you had made, correct?

    A. Correct.

Q. And so the implication from the SEC was that what you had tweeted was not true, correct?

MS. ABIGAIL ROSEN: Objection.

A. Correct. BY MR. ERIC ROSEN:

Q. When you tweeted "haven't sold a share," were you referring generally -- and this is generally -- were you referring to sales made days, weeks, or months ago?

MS. ABIGAIL ROSEN: Objection.

A. That would mean that day. BY MR. ERIC ROSEN:

Q. Why would it mean that day?

A. Well, of course I don't know a specific example, but that's something I would say at the end if a stock was red meaning down, I'm just saying I haven't sold a share that day causing that red.

Q. You didn't mean that "haven't sold a share" means that you had never sold a share of that stock since you began holding it?

A. No. I always encouraged, if a stock is green, sell." (Gallagher Dep. 92:4-93:12);

*and*

"Q. But did you ever tweet out -- do you recall tweeting out things saying I am never going to sell a stock forever. I am going to hold this until I die, type of thing?

A. I may have said jokingly, I am not selling. That's just a vague term. Everyone says that. Of course, if the stock goes up, you are going to sell.

Q. Is it possible to take profits or sell smart without selling shares?

A. No. You have to sell shares.

Q. Right. Is it your opinion that people following you on Twitter would understand that you would -- you were selling shares when the price went up?

A. Yes. Yes. I would want people to know that." (Gallagher Dep. 11:25-12:16);

*and*

"Q. Okay. "Weak team period. SCIE I'll hold."

A. Mm-hmm.

Q. Was this tweet also false?

A. No.

Q. Why not?

A. Because I was holding shares at the time.

> ATTORNEY ERIC ROSEN: My thing is -- sorry. It went to web pages.
>
> Q. So had you sold any shares at this point?
>
> A. Yes. As I always state, always take profits. I took profits.
>
> Q. Okay. And so your contention now is that this was not false because you still did hold some shares at this time --
>
> A. I -- I was holding --
>
> Q. I'm still asking the question.
>
> A. I'm sorry.
>
> Q. So your contention right now is that this tweet was not false because you were still holding some shares at the time of this tweet?
>
> A. That's accurate." (Gallagher Dep. 134:1–22).

- The SEC states that "victims also testified that they did not know that Gallagher was selling stock that he was recommending at the same time or shortly after tweeting his recommendations, and that such information would have been material to them." Pre-Motion Letter at 4. However, some examples of alleged victim's testimony do not show this characterization and instead states as follows:

  > "Q. Did you believe that Steven Gallagher was taking profits on the stocks he owned and tweeted about?
  >
  > A. Yeah, I'm pretty certain he's -- he tweeted that he was taking profit at times, so, yeah, I would say
  >
  > yes." (Deposition of Lloyd Boudloche 149:19-150:1);
  >
  > *and*
  >
  > "Q. What is your understanding of what he would mean when he used the phrase "take profits"?
  >
  > A. I think my understanding of taking profits is if it's going up, to sell, you know, portions of your shares for that stock.
  >
  > Q. And fair to say if he's telling other people to do that, would you agree with me that he was probably doing that himself; right?
  >
  > MS. ROSEN: Objection to form. THE WITNESS: Yeah, I -- I would assume." (Deposition of Nicholas Irwin 43:4–13)
  >
  > *and*
  >
  > "Q Okay. Do you understand what the phrase "take profits" means?
  >
  > A Yes.
  >
  > Q Would there be a way to take profits without selling?

> A No.
>
> Q Okay. And do you --
>
> THE COURT REPORTER: I'm sorry. What was -- MS. JONES: -- believe that Alexander Delarge -- THE COURT REPORTER: -- the answer? I'm sorry. I'm sorry. What was the answer?
>
> THE WITNESS: No. BY MS. JONES:
>
> Q And do you believe that Alexander Delarge was allowed to take profits?
>
> A Yes." (Deposition of Hanfen Liu 140:6–21).

- The SEC states that the "evidence shows that Gallagher placed multiple above-market, end-of-day (EOD) trades in SPOM and BZWR and that Gallagher's brokerage firm temporarily suspended him from entering buy trades in any security for this reason. In addition, Gallagher's message to one of his associates that he could "move [BZWR] 10 cents EOD" on a date that he placed above-market end-of-day bids for BZWR, plainly shows his intent." Pre-Motion Letter at 4-5. However, an example from Mr. Gallagher's testimony does not show this characterization and instead states as follows:

   > "Q. You ask how much BZWR you have, and then you say, "I can move it 10 cents EOD."
   >
   > What did that mean?
   >
   > A. That was me just being cocky, arrogant. You can't move the stock 10 cents in a day. I was -- she's cute. I was flirting. I was being kind of arrogant.
   >
   > Q. Okay. And what was the purpose of entering the end-of-day limit orders at or above the offer price for BZWR?
   >
   > A. Oh, just buy at the end of the day just to get in. Not above or nothing like that.
   >
   > Q. But you did put in orders above the ask price. Right?
   >
   > A. On BZWR?
   >
   > Q. Mm-hmm.
   >
   > A. BZWR is one I -- it -- yes. The SPOM was multiple buys at the end of the day. I did not know that putting in one trade for over the price at the end of the day, that that was a problem.
   >
   > Q. Your testimony is that you only did that from BZWR one time?
   >
   > A. No. I think I did it multiple times because I didn't know it was a problem.
   >
   > Q. Okay.
   >
   > A. I thought you were allowed to buy -- I thought you weren't allowed to do multiples at the end of the day, but I thought you could do one." (Gallagher Dep. 396:20-397:22).

### III. Conclusion

For all the reasons included herein the SEC should be precluded from filing for summary judgment.

Respectfully submitted,

*/s/ Eric S. Rosen*
Eric S. Rosen
Kimberly A. Jones
DYNAMIS LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 802-9157
erosen@dynamisllp.com

**Cc:    Counsel of Record**